**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VANESSA CAZARES, individually, and on behalf of all others similarly situated | ) ) ) | No. 25 C 4974 |
| *Plaintiff*, | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) ) | |
| PROGRESSIVE UNIVERSAL INSURANCE COMPANY | ) ) ) | |
| *Defendant*. | ) | |

**OPINION & ORDER**

Following the Court's grant of Progressive Universal Insurance Company's ("Progressive") earlier Motion to Dismiss on January 12, 2026, Vanessa Cazares re-filed a putative class action against Progressive on several grounds. First, Cazares alleges Progressive improperly attempted to defeat or avoid her Policy in violation of the Illinois Insurance Code. (Third Amended Complaint[1] ("TAC"), Dkt. 50 at 21) Second, Cazares alleges breach of contract. (Dkt. 50 at 28). Third, Cazares alleges vexatious and unreasonable denial and delay, also under the Illinois Insurance Code. (Dkt. 50 at 33) Fourth, Cazares alleges an Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) claim. (Dkt. 50 at 36). Finally, Cazares alleges a Declaratory Judgment claim. (Dkt. 50 at 41). Progressive again moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 56). For the reasons below, the Court denies Progressive's

[1] Cazares filed a Second Amended Complaint on February 2, 2026, [45] but re-filed the operative complaint [50] later that month.

Motion to Dismiss as to Counts I–IV and grants the Motion as to Count VI. (Dkt. 56). (There is no Count V in the TAC.)

## BACKGROUND

The following facts are set forth in the TAC, except where noted, which the Court accepts as true in its resolution of a Motion to Dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). The Parties attach several exhibits to their briefs. (*See, e.g.*, Dkt. 56-1 at 1, Exhibit 1; Dkt. 50, Exhibit A, Exhibit B). The Court may consider documents attached to a complaint or a plaintiff's response to a Rule 12(b)(6) motion without converting the motion into one for summary judgment. See *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing Fed. R. Civ. Pro. 10(c)); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove").

On April 12, 2024, Cazares applied online for an automobile insurance policy for her 2019 Chevrolet Equinox (the "Vehicle"). (Dkt. 50 ¶¶ 5, 25). Progressive approved the application and issued Plaintiff an automobile insurance policy for the Vehicle, effective the same day as the application (the "Policy"). (*Id.* ¶¶ 5, 30; Plaintiff's Exhibit A: Auto Insurance Coverage Summary, Dkt. 50-1). In both her application and on her declarations page, Cazares listed only herself under the Policy's covered "Drivers and household residents." (Exhibit A at 1). According to Plaintiff's allegations, Cazares's son, Luis Corral, did not live with Cazares at the time of the original application or at the time of the policy renewal, nor was Corral an individual who regularly drove Cazares' 2019 Chevrolet Equinox at the time of either event. (Dkt. 50 ¶¶ 44, 51).

On April 26, 2024, Progressive sent Cazares a letter stating it had "information that suggests the following individuals may either live in your household or regularly drive your

vehicles" and named Elodia Cazares and Jose Cazares. (*Id.* ¶ 38; Plaintiff's Exhibit F). The letter further states that this was Progressive's attempt to verify that it had "accurate information for your policy, and it is your responsibility to provide and maintain accurate policy information as outlined in your insurance application and policy contract. This includes providing names of all individuals who regularly drive your vehicles as well as those that are old enough to drive and live in your household." (*Id.*) Cazares went to the Progressive website to make sure she did not make a mistake and observed language that directed her to include "Titled owners to the vehicles on the quote, everyone who drives a quoted vehicle and any other person, age 15 or older, who lives in your household." (Dkt. 50 ¶ 40). Plaintiff contends that nowhere in its application process did Progressive state that the applicant was required to identify "children who live away from home who drive these vehicles, even occasionally" as drivers on the policy. (Dkt. 50 ¶¶ 35, 65).

After six months, Cazares renewed the Policy on its expiration date—October 12, 2024—for a second six-month term through Progressive's automatic renewal through payment of the renewal premium. (Dkt. 50 ¶¶ 5, 53, 55; Plaintiff's Exhibit B: Second Auto Insurance Coverage Summary, Dkt. 50-2). Cazares did not submit a formal renewal application "pursuant to typical policy and practice at Progressive." (Dkt. 50 ¶ 6). On January 2, 2025, during her second policy term, Corral borrowed the vehicle and was in a car accident. (*Id.* ¶¶ 7, 58). The accident resulted in extensive damage, with a repair estimate of $4,506.65. (*Id.* ¶ 60). Accordingly, Cazares made a claim with Progressive timely under the terms of the Policy. (*Id.* ¶ 61). On January 28, 2025, Progressive denied collision and liability coverage on the claim, noting that Corral should have been listed as a driver on the application in order for the total policy premium for all persons of driving age to be properly calculated. (*Id.* ¶ 62).

On May 6, 2025, Cazares filed suit. (Dkt. 1). This Court granted Progressive's earlier Motion to Dismiss, however, finding that Illinois law did not permit a claim under circumstances such as Cazares'. (Dkt. 43). The Court held that at the time of her policy's renewal, Cazares explicitly listed only herself under the "Drivers and household residents" section of her Second Policy because Progressive's Second Policy explicitly incorporated the initial application for insurance, which contained the material misrepresentation; thus, Cazares had misrepresented her application for the Second Policy. (Dkt. 43 at 6).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678,129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations.

## DISCUSSION

This Opinion assumes familiarity with the Court's previous ruling (Dkt. 43), and builds off of the background and analysis therein. In considering a motion to dismiss filed before a class has been certified, the Court looks only to the named plaintiff's individual claims and circumstances. *See Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) (holding that "because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs").

### I. Improper Denial of Claim to Avoid or Defeat Policy

Section 154 of the Illinois Insurance Code provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or **materially affects either the acceptance of the risk or the hazard assumed by the company**. With respect to a policy of insurance as defined in subsection (a), (b), or (c) of Section 143.13 *** a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less. This Section shall not apply to policies of marine or transportation insurance."

215 ILCS 5/154 (emphasis added).

The vast majority of Plaintiffs' claims and contentions surrounding Count I are akin to an argument for reconsideration on the legal conclusions of the Court's earlier ruling stuffed into the TAC. Strictly speaking, the Court could disregard the legal arguments as such. *See, e.g.*, *Moretto v. Tazewell Cnty. Sheriff's Off.*, 2019 WL 2291449, at *2 (C.D. Ill. May 29, 2019) ("Plaintiffs' attempt to relitigate an issue that has already been evaluated, and dismissed, by the Court is

improper."). Ultimately, though, Plaintiff is not seeking "reconsideration" of the Court's holding; rather, Plaintiff is changing its argument based on its operative Complaint. Thus, the Court addresses the question anew in present form, in light of the newly pleaded allegations.

"A 'misrepresentation' in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Ratcliffe v. Int'l Surplus Lines Ins. Co*, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990). A material misrepresentation will render a contract unenforceable even if it is made mistakenly or in good faith; "thus, an insurer need not prove that a misrepresentation was made with the intent to deceive so long as it was material to the assumed risk." *Styzinski v. United Sec. Life Ins. Co. of Illinois*, 772 N.E.2d 888, 893 (Ill. App. Ct. 2002) (citing *Ratcliffe*, 550 N.E.2d at 1052). That includes where an answer "might reasonably influence an insurer to reject a risk or charge a higher premium." *TIG Ins. Co. v. Reliable Rsch. Co.*, 228 F. Supp. 2d 921, 928 (S.D. Ill. 2002), aff'd sub nom., *TIG Ins. Co. v. Reliable Rsch. Co.*, 334 F.3d 630 (7th Cir. 2003).

The materiality of the alleged misrepresentation is not meaningfully in dispute at this stage.[2] The list of drivers who regularly operate a covered automobile are among the most fundamental elements of automobile insurance policies alongside information about the vehicles themselves, and it is fair to assume Progressive "would have issued [the policy] for a much higher premium" had it known about the additional young driver—indeed, external documentation that both parties rely on demonstrate this point. *Essex Ins. Co. v. Galilee Med. Ctr. S.C.*, 815 F.3d 319, 324 (7th Cir. 2016) (observing that Illinois courts use an objective test that asks whether a

[2] Alternatively, Progressive advances arguments regarding Cazares's "actual intent to deceive" as demonstrated by a video recording of Plaintiff's experience navigating Progressive's online application, including toggling through adding her son to the insurance plan and witnessing a subsequent increase in costs. (Dkt. 58). Progressive could be well be right. Ultimately, though, the "veracity, authenticity, and representativeness of [this video] are questions for summary judgement or trial, not a motion to dismiss." *Cohen v. Kering Americas, Inc.*, 2024 WL 4534988, at *3 (N.D. Ill. Oct. 21, 2024) (citing *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

"reasonably careful and intelligent" underwriter "would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application"). Instead, the key question here involves the applicability of the second-to-last line in Section 154.

In its earlier ruling, the Court held that when Cazares took out the Second Policy, the new policy explicitly "incorporated the initial application for insurance," resulting in a brand-new contract, and thus the temporal restriction contained in Section 154 did not save Cazares' claim from defeat due to her misrepresentation. *Illinois State Bar Ass'n Mut. Ins. Co. v. Brooks, Adams & Tarulis*, 24 N.E.3d 237, 239 (Ill. App. Ct. 2014); *Call One Inc. v. Berkley Ins. Co.*, No. 21-cv-466, at 6, 11 (N.D. Ill. Sept. 30, 2025) (holding that under Illinois law, "a policy renewal is effectively a new contract").

Now, Plaintiff contends that the legislature anticipated Progressive's renewal structure and designed the law to "unequivocally cover[] instances where there has been a renewal of the policy." (Dkt. 75 at 1). Yet were it true that the "expiration of the first policy term [alone] triggers section 154's protections," as Cazares puts forth, (Dkt. 75 at 1), it would render superfluous (or at least mildly confusing) the General Assembly's inclusion of "or policy renewal" in the statutory terms. A renewal itself comes only after expiration of the first policy term. So this intent-driven viewpoint, standing alone, is not the slam dunk Plaintiff conceives it to be, as Illinois law requires that the Court not assume the legislature engaged in a meaningless act. *Skillet Fork River Outlet Union Drainage Dist. v. Fogle*, 46 N.E.2d 73, 77 (Ill. 1943).

Nevertheless, Cazares makes enough factual arguments to explain the alleged differences between her contract renewal and those in the case law supporting this Court's original ruling that the Court cannot grant Progressive's Motion to Dismiss the amended allegations. Cazares distinguishes the "operative" renewal applications discussed in the case law in the Court's prior

ruling and now alleges that, unlike the parties involved in those cases, Progressive required no renewal application, asked no renewal questions, and obtained no renewed representations. In other words, Cazares alleges circumstances that could be sufficient to state a claim that is not impeded by the temporal restriction. At the least, it is a question that is a better fit for a ruling on summary judgment or trial.

On a related note: the parties proceed into arguments about whether Progressive's application process is sufficiently forthcoming, as well as whether Plaintiff's behavior on Progressive's application affirmatively resolves any aspect of the legal claim at present; however, those are merits disputes sufficiently beyond the threshold question at present. "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations." *Lavin v. Reed*, 2023 WL 7182950, at *2 (N.D. Ill. Nov. 1, 2023).

Finally, Progressive—responding to Plaintiff—briefly raises the argument that Progressive's denial of Cazares's claim for failing to divulge her teenage son as a driver of the vehicle does not amount to a rescission of the Policy impeded by the temporal restriction of Section 154 because "Plaintiff never secured coverage for the risk created by the son driving the Vehicle," and thus no meeting of the minds occurred. (Dkt. 76 at 3). This argument, which changes the terms of the entire litigation, cannot be simply introduced in a Reply. *See Giant Screen Sports LLC v. Sky High Ent.*, 2007 WL 627595, at *4 (N.D. Ill. Feb. 27, 2007) (citing *Aliwoli v. Gilmore,* 127 F.3d 632, 635 (7th Cir. 1997)).

At bottom, the allegations in Cazares' earlier pleadings were insufficient to distinguish from that prior case law, but the TAC lifts those claims up to a dispute of fact sufficient to "state a claim to relief that is plausible on its face." *See Call One Inc. v. Berkley Ins. Co.*, 655 F. Supp. 3d 733, 738 (N.D. Ill. 2023) (discussing a motion to dismiss on a counterclaim wherein the original

claim was brought under Section 154). Depending on how this litigation proceeds, Progressive may find that "strict application of the Code's time limit creates a harsh and arguably unfair result, at least from the insurer's perspective," but as one Illinois state court put it, this concern is "more properly directed toward the legislature." *United Equitable Ins. Co. v. Thomas*, 193 N.E.3d 301, 316-317 (Ill. App. 2021) ("Nevertheless, application of the plain language of the Code means that, in cases such as this, the insurer loses the ability to rescind when it does not learn of the insured's misrepresentation until more than one year or one policy period has elapsed."); *Standard Mut. Ins. Co. v. Jones*, 965 N.E.2d 1129, 1133–34 (Ill. App. 2012) (holding that "while an insurance company might have no duty to conduct an investigation into the truthfulness of an applicant's answer, if it wishes to rescind certain types of policies based on a misrepresentation in the application for that policy, the plain language of [S]ection 154 limits the amount of time in which it can do so"). Thus, Progressive's Motion to Dismiss Count I is denied.

## II. Breach of Contract (Count II), Vexatious and Unreasonable Delay under 215 ILCS 5/155 (Count III), and Violation of the ICFA (Count IV)

Progressive makes no independent arguments regarding Counts II–IV, instead resting on its arguments as to the policy renewal re-starting the relevant time period for Section 154 and noting that subsequent claims must also fail. To be sure, Progressive is correct to identify the steep uphill climb of a claim under Section 155,[3] as well as the complicated nature of claiming a deceptive process (necessary for common law and ICFA claims) in light of Plaintiff's apparent repeated engagement with Progressive's application requirements for covered drivers. Nonetheless, because this argument was inadequately developed in the motion to dismiss, the Court denies the Motion on these Counts. *See Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012);

[3] "Section 155 'provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit.'" *Wolf v. Riverport Ins. Co.,* 132 F.4th 515, 519 (7th Cir. 2025).

*Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 853 (N.D. Ill. 2023) ("It is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). To the extent Progressive independently begins to investigate these Counts in its Reply, the Court cannot waiver from this resolution. *Berryhill v. Enhanced Recovery Co. LLC*, 2019 WL 2325999, at *2 (N.D. Ill. May 31, 2019) ("It is 'well-settled' that litigants cannot make new arguments or present new facts in a reply brief.").

**III. Declaratory Judgment**

In Count VI, the Plaintiffs argue for declaratory judgment. The federal Declaratory Judgment Act provides that, subject to certain exceptions, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Plaintiff seems to confuse declaratory relief—a remedy—with a cause of action, and should not have listed the Declaratory Judgment Act as separate cause of action in the complaint. *See Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021). The Court dismisses Count VI accordingly. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 646 (7th Cir. 2007).

**CONCLUSION**

For the reasons set forth above, Progressive's Motion to Dismiss [56] is granted as to Count VI and denied as to Counts I–IV.

Virginia M. Kendall
United States District Judge

Date: August 26, 2026